UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PLANET BINGO, INC.,

        Plaintiffs,

v.

                                  No.: 5:10-cv-00315

MICHAEL KERR, an individual; RANDY
VON DRASEK, an individual; ROY M.
STEVENS, JR., an individual; and BIGTRAK
TECHNOLOGIES, LLC, a Texas limited
liability company,

        Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FRCP 12(b)(2) AND 12(b)(6), AND MOTION TO POST BOND UNDER § 501.211 AND SUPPORTING MEMORANDUM OF LAW

Defendants BigTrak Technologies, LLC ("BigTrak"), Mike Kerr ("Kerr"), Randy Von Drasek ("Von Drasek") and Roy Stevens, Jr. ("Stevens") (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(2) and (6), and Local Rule 7.1, hereby file this Memorandum of Law in Support of their Motion to Dismiss the Complaint filed by Plaintiff Planet Bingo Inc ("Planet") or Plaintiff.

**Table of Contents**

**Page(s)**

I.     INTRODUCTION.................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

    A.    Plaintiff's Complaint........................................................... 2

    B.    Background.................................................................... 3

    C.    Defendants Are Not Florida Residents And Do Not Do Business In Florida........4

    D.    Defendants Vehemently Dispute Plaintiff's Allegations As To The Claimed
Tortious Interference With Contractual Relations..................................... 5

    E.    Dalton's Testimony Shows There Is No Basis For Plaintiff's Claims..............7

III.   ARGUMENT

    A.    The Court Lacks Personal Jurisdiction Over All Of The Defendants................8

        1.    The Florida Long-Arm Statute (48.193. Fla. Stat.)............................ 9

            a.    Planet Cannot Establish This Court's Specific Jurisdiction
Over BigTrak .................................................................10

                i.    None of the Defendants Induced Wild Bill's To
Breach Its Contract With
Planet.......................................................................11

                ii.    The Individual Defendants Are BigTrak Employees
Who Cannot Be Sued For Tortious
Interference................................................................14

                iii.   Defendants Cannot Be Liable Under FDUTPA............15

            b.    Planets Allegations Of General Jurisdiction Fail....................16

            c.    There Is No Due Process To Hail Defendants Into
Florida Court................................................................18

    B.    Planet's Claims Should Be Dismissed Under FRCP 12(b)(6)......................19

        1.    Legal Standard..............................................................19

        2.    Planet's First Claim For Tortious Interference With Contract Does
Not State A Claim For Which Relief Can Be Granted.....................20

a. None Of The Defendants Induced Wild Bill's To Breach Its Contract With Planet As A Matter Of Law......................20

b. The Individual Defendants Are BigTrak Employees Who Cannot Be Sued For Tortious Interference..........................22

c. Defendants Cannot Be Liable Under FDUTPA....................22

d. Plaintiff Has Impermissibly Pled Its Claims Against All Defendants As A Group................................................24

C. Summary Judgment Is Also Warranted................................................24

D. Motion To Post Bond................................................................25

IV. CONCLUSION

## TABLE OF AUTHORITIES

Page(s)

CASES

*Aetna Life and Casualty Co v Therm-o Disc. Inc.,*
   511 So. 2d 992 (Fla. 1987)..................................................................................11

*Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.,*
   (Slip) 2010 WL 2821950 (M.D.Fla. 2010) ................................................15, 16, 23

*Alternate Energy Corp. v. Redstone,*
   328 F.Supp.2d 1379 (S.D. Fla. 2004) ..............................................................11

*Appointed Receiver v. Cutco Group Ltd.,*
   No. 05-60080-Civ, 2008 WL 926512 (S.D. Fla. March 31, 2008)..........................24

*Armadillo Distribution Enter. Inc. v. Clavia DM1 AB,*
   2009 U.S. Dist. LEXIS 100795 (M.D. Fla. 2009) ............................................9, 10

*Ashcroft v. Iqbal,*
   --U.S. --, 129 S.Ct. 1937 (2009) ........................................................19, 20, 21, 24

*Beacon Property Management, Inc. v. PNR, Inc.,*
   785 So.2d 564 (Fla. 4th DCA 2001), *reh'g denied, review granted* 817 So.2d 849, and
   *on remand,* 890 So.2d 274 .........................................................................15, 23

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).........................................................................................21

*Bond v. Ivy Tech State College,*
   167 Fed.Appx. 103 (11th Cir. 2006).....................................................................11

*Bullard Abrasives. Inc. v. Taiwan Resibon,*
   9009 U.S. Dist LEXIS 55242 (M.D. Fla. 2009) ...................................................19

*Burger King Corp. v. Ashland Equities, Inc.,*
   161 F.Supp.2d 1331 (S.D. Fla. 2001) ........................................................16, 23, 24

*Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*
   832 So. 2d 810 (Fla. 2d DCA 2002)..............................................................12, 20

*Citicorp Ins. Brokers (Marine), Ltd. v. Charman,*
   635 So (Fla. 1st DCA 1994) ..............................................................................10

*DeKalb Genetics Corp. v. Syngenta Seeds, Inc.,*
   2007 U.S. Dist. LEXIS 60661 (E.D. Mo. August 17, 2007) ..................................11

*Estabrook v. Wetmore,*
    129 N.H. 520, 529 A.2d 956 (1987) ...................................................................................14, 22

*GSW, Inc. v. Long County, Ga.,*
    999 F.2d 1508 (11th Cir.1993) ........................................................................................19

*International Shoe v. Washington,*
    326 U.S. 310 (1945)..........................................................................................................9

*Jay v. Mobley,*
    783 So.2d 297 (Fla. 4th DCA., 2001) ..........................................................................12, 23

*Jet Charter Serv., Inc. v. Koeck,*
    907 F.2d 1110 (1lth Cir. 1990), *cert. denied*, 499 U.S. 937 (1991).........................................10

*Kim Yong Lung Indus. Co. v. Temple,*
    816 So.2d 663 (Fla. 2d DCA 2002) .................................................................................19

*Lewis v. Asplundh Tree Expert Co.*
    305 Fed. Appx. 623, 2008 WL 5411565 (11th Cir. 2008)................................................24

*Madara v. Hall,*
    916 F.2d 1510 (11th Cir. 1990) ....................................................................................9, 18

*Marco Island Cable, Inc. v. Comcast Cablevision of the S., Inc.,*
    2006 WL 1814333 (M.D.Fla. 2006) ...............................................................................15, 23

*Martin Petroleum Corp. v. Amerada Hess Corp.,*
    769 So. 2d 1105 (Fla. 4th DCA 2000) .....................................................................12, 13, 21

*Meier v. Sun International Hotels. Ltd.,*
    288 F.3d 1264 (11th Cir. 2002) ......................................................................................16

*Moltz v. Seneca Balance, Inc.,*
    606 F. Supp. 612 (S.D. Fla. 1985) ....................................................................................9

*North American Clearing, Inc. v. Brokerage Computer Systems, Inc.,*
    666 F.Supp.2d 1299 (M.D. Fla. 2009) ...........................................................................15, 23

*Planet Bingo, LLC et al. v. Randy Von Drasek, et. al,*
    Case No. 2:08-cv-04822-GW-FMO. ("Central District Action") .............................................4

*Planet Bingo, LLC v. BigTrak Technologies LLC, et al,*
    INC 090219 (Sup. Ct. Riverside) ("*Riverside Action*").......................................................3, 7

*Powercerv Technologies Corp. v. Ovid Technologies, Inc.,*
    993 F.Supp. 1467 (M.D.Fla.1998).................................................................................17, 18

*Prentice v. Prentice Colour,*
779 F. Supp 578 (M.D. Fla. 1991)................................................................11, 18

*Rensin v. State, Office of Atty. Gen., Dept. of Legal Affairs,*
18 So.3d 572 (Fla.App. 1 DCA., 2009) ...........................................................14, 22

*Rexam Airspray Inc. v. Arminak,*
471 F. Supp. 2d 1292 (S.D. Fla. 2007) ........................................................9, 10, 11

*Sculptchair. Inc. v. Century Arts, Ltd.,*
94 F.3d 623 (11th Cir. 1996) ...........................................................................9, 18

*Snow v. DirecTV, Inc.,*
450 F. 3d 1314 (11th Cir. 2006) ............................................................................11

*Stires v. Carnival Corp.,*
243 F.Supp.2d 1313 (M.D.Fla.2002)..............................................................16, 23

*Stomar, Inc. v. Lucky Seven Riverboat Co., L.L.C.,*
821 So.2d 1183 (Fla. 4th DCA 2002)..............................................................14, 22

*Sundance Apartments I, Inc. v. General Elec. Capital Corp.,*
581 F.Supp.2d 1215 (S.D.Fla.2008) ...............................................................15, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 ...........................................................................................................19

*Venetian Salami Company v. Parthenais,*
554 So. 2d 499 (Fla. 1989)........................................................................................9

*Voorhees v. Cilcorp, Inc,*
837 F.Supp. 395 (M.D.Fla.1993)............................................................................17

*Walack v. Worldwide Machinery Sales, Inc.,*
278 F.Supp.2d 1358 (M.D.Fla.2003)......................................................................17

*Williams Electric Co. v. Honeywell, Inc.*
854 F. 2d 389 (11th Cir. 1988) ...............................................................................17

## STATUTES

§48.193, Fla. Stat. ................................................................................................1, 9

§48.193(1), Fla. Stat.........................................................................................10, 11

§ 48.193(1)(f)(1), Fla. Stat.......................................................................................11

§48.193(2), Fla. Stat................................................................................................10, 16

§ 501.211(3) Fla. Stat...........................................................................................................25

**OTHER AUTHORITIES**

Fourteenth Amendment ....................................................................................................18

Fed. R.Civ.P.12(b)(2)......................................................................................................1, 24

Fed. R.Civ.P. 12(b)(6)...............................................................................................5, 19, 20

Fed. R.Civ.P.12(b)6 ..............................................................................................................1

Fed. R.Civ. P.Rule 9(b)...............................................................................................16, 23

U.S. Constitution................................................................................................................18

## I.     INTRODUCTION

Planet sues numerous Defendants in Florida Federal Court after unsuccessfully suing these same Defendants in Federal Court in California. This is the most recent in a series of meritless actions brought by Planet against a smaller competitor, BigTrak, and anyone else Planet can connect to BigTrak. The Complaint contains two counts for tortuous interference with contract and a derivative Florida Deceptive and Unfair Practices Trade Act ("FDUPTA") claim.

All Defendants move to dismiss Planet's Complaint for lack of *in personam* jurisdiction under Florida Statute § 48.193 and Fed.R.Civ.P. 12(b)(2). Specific jurisdiction does not exist because Planet cannot provide any facts that would establish that any of the Defendants induced a third party, Wild Bill's Bingo, to breach its contract with Planet and the facts to the contrary are unequivocal and undisputed. Indeed, Wild Bill's principal, Mr. Dalton, has unequivocally testified to the contrary under oath in another case filed by Planet. He also submitted a declaration to that effect in yet another case filed by Planet. In addition, the individual Defendants should be dismissed under the corporate shield doctrine as their alleged conduct was performed, if at all, on BigTrak's behalf. General jurisdiction does not exist over any of the Defendants because they are not Florida residents and do not otherwise have the requisite continuous and systematic ties to Florida. Finally, the FDUPTA claim fails for numerous reasons.

Defendants also move to dismiss Planet's claims under Fed.R.Civ.P. 12(b)6) because Planet cannot state a claim for which relief can be granted. Both of the claims alleged in Planet's Complaint are wholly conclusory and do not satisfy the Federal pleading standards. In addition, as noted above, all of the available evidence confirms that Planet cannot establish as a matter of law that any of the Defendants induced or intended to induce the third party, Wild Bill's, to breach its contract with Planet. For these reasons and others, the FDUPTA claim likewise fails.

Alternatively, Defendants request that the Court enter summary judgment against Planet on all counts because the admissible evidence can only lead to the conclusion that Planet cannot

1

establish Defendants' liability on either claim as a matter of law.  There are no facts to the contrary.  Planet has already conducted significant discovery in the contracts at issue.  There is no merit to its claim.

In the event the Court is inclined to allow any of the claims to be maintained, the Court should order Planet to post a bond for the reasonable attorneys' fees associated with the FDUPTA claim.

There is no shortage of sworn testimony squarely contradicting the "facts" alleged in the Complaint.  In the face of this sworn testimony, Plaintiff sets forth many of its salient allegations in this suit "on information and belief" without any explanation whatsoever.  Such pleadings are particularly meritless where, as here, unequivocal factual evidence to the contrary is available and known to Planet (indeed Planet obtained much of that evidence).  Simply put, there is no factual basis for Planet's claims and the Court should dismiss them at this time.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiff's Complaint

Planet filed its Complaint in this action on December 10, 2010.  (Jackson Decl., Ex. A, *hereinafter* "Compl.")  Planet's Complaint sets forth two causes of action alleged against the moving Defendants: (1) tortious interference with contract; and (2) violation of the Florida Deceptive And Unfair Trade Practices Act ("FDUTPA").  The FDUPTA claim is based entirely on the claim for tortuous interference with contract.  (*Id.* ¶ 70.)  Planet's Complaint names as Defendants BigTrak, a Texas LLC; Mike Kerr, a resident of Texas; Randy Von Drasek, a resident of South Carolina; and Roy Stevens, Jr., a resident of South Carolina.  The gravamen of the Complaint is that the Defendants tortiously interfered with a contract between Plaintiff, which is a California company, and Wild Bill's Bingo, Inc. ("Wild Bill's"), a Panama City, Florida bingo hall.

### B.   Background

Planet and Defendant BigTrak are competitors in the electronic bingo industry.  Planet is extremely litigious and seeks to use this lawsuit and many others to try to stifle legitimate

competition. To that end, the instant Complaint is not the first such lawsuit filed by Planet against one or more of the Defendants arising out of the same facts and circumstances alleged herein or the relationship between Planet and one or more of the Defendants. First, Plaintiff previously filed suit against Wild Bill's for breach of the contract in the U.S. District Court for the Central District of California on September 09, 2009, Case No. 09-CV -7078  PA (JEMx) ("*Wild Bill's Bingo I*"). (Jackson Decl. Ex. B, Order Granting Motion to Dismiss.) The contract at issue in *Wild Bills I* is the same contract at issue here. That Complaint was dismissed for lack of personal jurisdiction. (*Id.*)

Planet then refiled the same claim for breach of contract here in the Northern District of Florida, 10-cv-00064 ("*Wild Bill's Bingo II*"). In *Wild Bill's Bingo II*, Planet took the deposition of Wild Bill's principal, Bill Dalton. As explained in more detail below, Mr. Dalton's deposition testimony unequivocally confirms that this Court does not have personal jurisdiction over Defendants and that they cannot possibly be held liable to Planet for the claims alleged herein.

In the meantime, on October 6, 2009, around the same time Planet filed its initial complaint against Wild Bill's, Planet also filed suit in California against all of the moving Defendants except Roy Stevens Jr. for intentional interference with contract. *Planet Bingo, LLC v. BigTrak Technologies LLC, et al,* INC 090219 (Sup. Ct. Riverside) ("*Riverside Action*"). Planet also sued another BigTrak employee, Javier Rios, who is merely a video game *installer*, in that action. The California court dismissed Planet's claims against all Defendants except Mr. Rios for lack of personal jurisdiction.   (Jackson Decl. Ex. C, Order granting Motions to Dismiss.)[1]

In addition, Planet has filed and is maintaining an action (filed solely on "information and belief") for misappropriation of trade secrets against most of the moving Defendants in the

---

[1] In connection with the Motions to Quash for lack of personal jurisdiction filed in the California action, Defendants obtained and filed Declaration from Wild Bill's principal, Bill Dalton, describing under penalty of perjury the facts and circumstances surrounding Wild Bill's decision to terminate its relationship with Planet and to commence a relationship with BigTrak. Defendants submit Mr. Dalton's declaration in connection with and in support of the instant Motion to Dismiss. (Jackson Decl. Ex. F, Dalton Decl.)

3

Central District of California. That action is styled *Planet Bingo, LLC et al. v. Randy Von Drasek, et. al*, Case No. 2:08-cv-04822-GW-FMO. ("Central District Action").

Planet has also filed and is maintaining a lawsuit against one of BigTrak's customers, Electronic Game Solutions, Inc. ("EGSI") in Michigan. Planet had previously filed that action in California as well, but because it could not make out a *prima facie* case as to EGSI's liability, EGSI was dismissed from the California action for lack of personal jurisdiction. (Jackson Decl. Ex. D, Order Granting EGSI Motion to Dismiss.)

C.   Defendants Are Not Florida Residents and Do Not Do Business In Florida

As Planet concedes in its Complaint, Mr. Kerr is a resident of Texas and a citizen of Canada. (Compl., ¶ 2.)  Planet is incorrect in its allegation that Kerr is a managing member of BigTrak. He is not a managing member, nor has he ever been a managing member. (Kerr Decl. ¶ 2.)  Rather, Mr. Kerr, who used to be employed by Planet, is an employee of BigTrak. (*See id.* ¶¶ 2-5.) Mr. Kerr does not now reside, and has never resided in Florida. (Kerr Decl. ¶ 4.)  He does not pay taxes in Florida. (*Id.*)  As an employee of BigTrak, Mr. Kerr leases BigTrak's products to bingo halls and others. Finally, Mr. Kerr does not systematically or regularly do business in Florida. (*Id.*)

Mr. Von Drasek is a resident of South Carolina. (Compl. ¶ 3.) He is not now a resident nor has he ever been a citizen or resident of Florida. (Von Drasek Decl. ¶ 2.)  Mr. Von Drasek does not maintain a home in Florida. (*Id.*)  He does not pay taxes in Florida. (*Id.*)  Mr. Von Drasek is a computer programmer who indeed is a managing member of BigTrak. (*Id.* ¶ 4.)

Defendant Roy Stevens, Jr. is a resident of South Carolina. (Compl. ¶ 3.)  Mr. Stevens is not now and has never been a citizen or resident of Florida. (Stevens Decl. ¶ 3.)  Nor does Mr. Stevens maintain a home in Florida. (*Id.*)  He does not pay taxes in Florida. (*Id.*)  Mr. Stevens is a managing member of BigTrak.

Defendant BigTrak does not have and never has had any systematic business ties with Florida. (Von Drasek Decl. ¶ 3.)   As the Complaint concedes, BigTrak is a limited liability company organized and existing under the laws of the State of Texas, with offices in Corpus

4

Christi, Texas, Chicago, Illinois and Columbia, South Carolina. (*See id.*; *see also* Compl, ¶ 5.) BigTrak is not a resident of Florida, is not registered, licensed or authorized to do business in Florida, does not have any offices in Florida, does not have any employees residing in Florida, does not regularly solicit business in Florida, has never paid taxes in Florida, does not own real property in Florida, has no bank accounts in Florida, and does not otherwise have any meaningful contact with Florida. (*Id.*)

The Complaint falsely alleges that an electronic bingo game created by BigTrak is being used at a bingo hall in Florida, Leesburg Bingo. (Compl., ¶ 38.) That allegation is incorrect. Vegas ShootOut is not being played at any bingo hall in the United States. (*See e.g. also* Jackson Decl. Ex. E; Dalton Dep'n. at 48:16-19.)

     D.    <u>Defendants Vehemently Dispute Plaintiff's Allegations As To The Claimed Tortious Interference With Contractual Relations</u>

Planet's Complaint is wholly conclusory. The gravamen of the Complaint is that the Defendants tortiously induced a Panama City Florida bingo hall, Wild Bill's, to breach a written agreement with Planet regarding the lease of Planet's electronic equipment. (Compl. ¶¶ 60-68.) Defendants categorically deny Planet's allegations.

Planet previously sued Wild Bill's, in this Court, for breach of contract. *See Wild Bill's Bingo II*, 10-CV-00064 . During the course of that case, which has now settled, Planet took the deposition of Wild Bill's principal, Bill Dalton. As discussed in more detail below, Mr. Dalton testified that he solicited BigTrak, not the other way around, and that neither BigTrak, nor its employees, induced Wild Bill's to breach any contract that it may have had with Planet.

The actual facts underlying Plaintiff's claims can only lead to the conclusion that Planet cannot set establish this Court's *in personam* jurisdiction as against any of the Defendants. In addition, such facts confirm that Planet's claims are meritless and indeed frivolous and that the claims should be dismissed under Fed. R.Civ.P. 12(b)(6) or in the alternative via summary judgment.

Briefly, Plaintiff and BigTrak are competitors in the electronic bingo industry. They both offer, among other products, handheld electronic bingo games. These games are typically leased to charity halls. Wild Bill's is just such a charity hall.

Defendant Von Drasek is a computer programmer. (Compl. ¶ 13.) As such, he had nothing to do with the negotiation of any contracts between BigTrak and its customers and had nothing to do with the contract between BigTrak and Wild Bill's. (Von Drasek Decl. ¶ 4.) Defendant Stevens also had no involvement in the negotiations between BigTrak and Wild Bills. (Stevens Decl., ¶ 4.)

Defendant Kerr is a salesman. He participated in negotiating the BigTrak contract with Wild Bill's. However, the evidence is unequivocal and undisputed that neither Mr. Kerr nor anyone else at BigTrak induced Wild Bill's to breach its alleged contract with Planet. Indeed, the evidence is unequivocal that <u>Wild Bill's first contacted BigTrak, not the other way around</u>. (Jackson Decl. Ex. F, Dalton Decl. ¶¶ 5-7, and Ex. E, Dalton Dep'n. at 44:12--46:08; Kerr Decl. ¶¶ 6-7.) He first contacted BigTrak after learning about its product from a third party, ("EGSI"). (*Id.*) None of the Defendants sought to or intended to interfere with whatever relationship Wild Bill's may have had with Planet. (*Id.*)

After being contacted by Mr. Dalton, Mr. Kerr went to Panama City, Florida, at Mr. Dalton's request, to show Wild Bill's the BigTrak hand held electronic bingo unit and to answer whatever questions Wild Bill's might have. (*See id.*) The discussions eventually resulted in the formation of an economic relationship between Wild Bill's and BigTrak. None of the BigTrak employees named in Planet's Complaint had any personal interest in the transaction. (Kerr Decl. ¶10; Von Drasek Decl. ¶ 5; Stevens Decl. ¶ 5.) At the time Wild Bill's asked BigTrak to come to Florida, and at all relevant times thereafter, none of the Defendants had any knowledge of any enforceable agreement between Wild Bill's and Planet Bingo. (Kerr Decl. ¶ 7; Dalton Decl. ¶ 6.) In fact, Wild Bill's specifically told BigTrak that there was no enforceable agreement between the parties. (*See e.g.* Kerr Decl. Ex. A.) Wild Bill's provided Defendants with a letter confirming these facts around time the BigTrak / Wild Bill's relationship commenced.

6

The letter stated:

> Mike,
>
> We are contacting you at this time to discuss the electronic bingo products we use in our business. We have been advised by our attorney that we are not obligated nor restricted in any way from negotiating with BigTrak Technologies for the placement and use of your electronic bingo products. Based on this information, we ask that you contact us to present your products and pricing.
>
> We believe that we do not have a legal agreement with the current equipment provider and we are no longer satisfied with the performance of the products. We ask that you come to our location to demonstrate your products to us and if possible provide a list of locations where we may be able to go and see your products being used. We will send our employees to the location you provide, so as to determine if your products will meet our needs. Should your products prove to be what we are interested in, we will notify our current supplier to remove their equipment from our facility.
>
> Please contact either Bill or myself to arrange for a time for you to come to Panama City to demonstrate your products for us and to determine if your products will satisfy our needs.

(Kerr Decl. Ex. A.)

This letter, and the deposition testimony and declaration of Wild Bill's principal, Bill Dalton, as well as the declarations of Messrs. Kerr, Von Drasek and Stevens, confirm that none of the Defendants induced or intended to induce Wild Bill's to breach any contract that Wild Bill's may have had with Planet. Again, with respect to the individual employees, they are alleged to have acted within the scope of their employment with BigTrak and with the intent to benefit BigTrak, not to benefit themselves personally.

E.   Dalton's Testimony Shows There is No Basis for Plaintiff's Claims

In the Dalton declaration filed in support of the Motion to Dismiss that was granted in the *Riverside Action*, Mr. Dalton offers the following sworn statement:

> Earlier this year, I saw another company using electronic bingo equipment that I understood was manufactured by BigTrak technologies. I became interested in BigTrak's electronic bingo equipment which appeared more advanced and worked better than the equipment Planet Bingo furnished to us. I thus reached out

7

to Planet Bingo in July or August of 2009 and requested a demonstration of their hand held electronic unit. It was only at that time that I contacted BigTrak that I realized that Mike Kerr, who had previously been one of Wild Bill'd contacts from planet Bingo several years earlier, had left Planet Bingo and worked for BigTrak. **To be clear, I contacted Mr. Kerr. He never solicited Wild Bill's in any way for any business**. I simply contacted BigTrak and was put in contact with Mr. Kerr.

(Jackson Decl. Ex. F, Dalton Decl. ¶ 5.)  In his Declaration, Dalton went on to explain "I told Mr. Kerr that Wild Bill's did not have any enforceable agreement with Planet Bingo." (*Id.* ¶ 6.)  He also sent a letter to Kerr stating "we do not have a legal agreement with the current equipment provider and we are no longer satisfied with the performance of the products." (*Id.*)  Dalton also testified at deposition in *Wild Bill's II* as follows:

> Q.     When would have been the first communication between Wild Bill's and Big Trak?
>
> A.     That would have been after EGS came down to show me the handheld. . . .
>
> Q.     Do you recall  the website you would have seen that on?
> . . .
>
> A.     EGS.
>
> Q.     And you believe there was something on that site that referred to Big Trak?
>
> A.     Yeah. It was – the handheld was there, and I'm not sure whether it said Big Trak or what, or if I got if from the guys at EGS. Somewhere I picked up Big Trak . . .
>
> Q.     How did you pick up that it was Mike Kerr?
>
> A.     Because I called.
>
> Q.     Because Mike Kerr called?
>
> A.     I called.
>
> Q.     You called EGS, or you called –
>
> A.     I called – I called EGS, and I also called Big Trak, the number, and it was Mike Kerr.  And at that point I spoke with him, and I told him I liked the product, and that was it.  I wanted him to come down himself and explain it to me. He did.

(Jackson Decl. Ex. E, Dalton Dep'n. at 44:11—46:08.)

## III.   ARGUMENT

### A.   The Court Lacks Personal Jurisdiction Over All Of the Defendants

This Court should make a threshold determination as to whether it may extend personal jurisdiction over Defendants Kerr, Von Drasek, Stevens and BigTrak because "[p]ersonal

8

jurisdiction principles safeguard defendants from being unwillingly placed under the jurisdiction of a foreign court in a manner that is unjust and inequitable." *Rexam Airspray Inc. v. Arminak*, 471 F. Supp. 2d 1292, 1298 (S.D. Fla. 2007).

Planet alleges generally that "[t]his Court has personal jurisdiction over Defendants pursuant to Florida Statute § 48.193, in that Defendants have committed tortious acts within the State of Florida within this judicial district and, further, in that Defendants transact business activities within the State of Florida, including within this judicial district, as alleged herein." (Complaint, ¶ 7.)

As set forth by the Eleventh Circuit opinion of *Madara v. Hall*, 916 F.2d 1510, 1514(11th Cir. 1990):

> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. First, we consider the jurisdictional question under the state long-arm statute. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

(citations omitted); *see also Venetian Salami Company v. Parthenais*, 554 So. 2d 499 (Fla. 1989); *International Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

### 1.    The Florida Long-Arm Statute (48.193. Fla. Stat.)

The Florida long-arm statute, §48.193, Fla. Stat., is to be strictly construed, with the plaintiff bearing the burden of presenting substantial proof before a court will extend inpersonam jurisdiction over nonresident defendants. *Sculptchair. Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627(11th Cir. 1996); *Moltz v. Seneca Balance, Inc.*, 606 F. Supp. 612, 615 (S.D. Fla. 1985); *Armadillo Distribution Enter. Inc. v. Clavia DM1 AB*, 2009 U.S. Dist. LEXIS 100795 (M.D. Fla. 2009).

> If the plaintiff provides facts sufficient to establish personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by means of affidavits or other evidence. If

> the defendant provides sufficient support to meet its burden, then
> the burden shifts back to the plaintiff, who must then validate its
> jurisdictional allegations with affidavits, testimony or documents.

*Armadillo Distribution*, 2009 U.S. Dist. LEXIS 100795, at 6 (M.D. Fla. 2009) [citations

omitted]; *see also Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990), *cert.*

*denied*, 499 U.S. 937 (1991).

Here, Planet does not provide any factual allegations whatsoever as to whether Florida

has specific or general jurisdiction over any of the Defendants.   Accordingly, although the

burden has not shifted, in an abundance of caution, Defendant will provide the support for its

burden.

There are two potential types of jurisdiction under the Florida statute.  For the exercise of

the first type of jurisdiction, specific jurisdiction, the cause of action must arise from acts

undertaken by the non-resident defendant in Florida. See §48.193(1), Fla. Stat. "Although the

term 'arising from' does not mean proximately caused by, it does require direct affiliation,

nexus, or substantial connection to exist between the basis for the plaintiffs' cause of action and

defendants' business activity in the state." *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635

So, 2d 79 (Fla. 1st DCA 1994).  The other potential basis for jurisdiction, general jurisdiction,

requires a showing of "substantial and not isolated activity" with the forum state. (See

§48.193(2), Fla. Stat. "Florida courts hold that 'substantial and not isolated activity' means

'continuous and systematic general business contact' with Florida." *Rexain*, 471 F. Supp. 2d at

1298 (citations omitted).

Here, it is readily apparent that Planet fails to plead sufficient operative facts to support

the exercise of either specific or general jurisdiction over BigTrak.  Planet's Complaint contains

only one sentence of conclusory unsubstantiated allegations which fail to provide a sufficient

jurisdictional predicate. With respect to general jurisdiction, Planet alleges only that BigTrak is

a Texas limited liability company, with offices in Texas, and had members including Kerr, Von

Drasek and Stevens Jr., none of whom reside in Florida.  (Compl. ¶¶ 6-9.)  With respect to

specific jurisdiction, Planet alleges conclusorily that Defendants induced a third party to breach a

contract with Planet. These allegations are patently insufficient to establish a *prima facie* basis for the assertion of general or specific jurisdiction over BigTrak. *See Snow v. DirecTV, Inc.,* 450 F. 3d 1314, 1318 (11th Cir. 2006) (vague and conclusory allegations insufficient to establish *prima facie* case of personal jurisdiction).[2]

a.   Planet Cannot Establish This Court's Specific Jurisdiction Over BigTrak (§48.193(1)(b). Fla. Stat.)

Section 48.193(1) provides for specific personal jurisdiction when a claim arises from the defendant's forum-related contacts. *Alternate Energy Corp. v. Redstone,* 328 F.Supp.2d 1379, 1382 (S.D. Fla. 2004). Planet claims this Court has specific personal jurisdiction over all of the Defendants pursuant to § 48.193(1) Fla. Stat., allegedly because "Defendants have committed tortious acts within the State of Florida within this judicial district . . . " (Compl. ¶ 7). Such an allegation implicates only §48.193(1)(b). Fla. Stat.[3] Planet's complaint contains two causes of action against Defendants for intentional interference with a contract and a violation of the Florida Deceptive and Unfair Practices Act ("FDUPTA"). The FDUPTA claim is based on and derived from the claim for tortious interference. (Compl., ¶ 70.)

**(i)    None of the Defendants Induced Wild Bill's To Breach Its Contract With Planet**

Under Florida law, the requisite elements to state a claim for intentional interference with contract are as follows: (1) the existence of a business relationship; (2) knowledge of the

---

[2] *See also DeKalb Genetics Corp. v. Syngenta Seeds, Inc.,* 2007 U.S. Dist. LEXIS 60661,at *10 n. 4 (E.D. Mo. August 17, 2007) ("The only allegations in Plaintiff's First Amended Complaint, regarding personal jurisdiction, listed the Defendants' states of incorporation, and locations of their principal places of business. The Court held that this information alone was insufficient to show personal jurisdiction in Missouri"); *see also Rexam,* 471 F.Supp.2d at 1298.

[3] Planet cannot allege that § 48.193(1)(f)(1) Fla. Stat. (causing injury in Florida while engaged in solicitation or service activities within Florida) because there was no injury to person or property. The Florida Supreme Court has held that the provisions of §48.193(1)(f) contemplate personal injury or physical property damage, and do not afford a basis for jurisdiction over a nonresident defendant whose activities result only in economic damage within the State. *Aetna Life and Casualty Co v Therm-o Disc. Inc.,* 511 So. 2d 992, 994 (Fla. 1987). *accord, Bond v. Ivy Tech State College,* 167 Fed.Appx. 103, 105 (11th Cir. 2006); *Prentice v. Prentice Colour,* 779 F. Supp 578, 585 (M.D. Fla. 1991). This section, therefore, likewise does not afford a basis for finding jurisdiction over the Defendants herein.

relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.* 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). Imbedded within these elements is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages. *Id.* (citing *St. John's River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784 So.2d 500, 504 (Fla. 5th DCA 2001)).

Causation requires a plaintiff to "prove that the defendant manifested a specific intent to interfere with the business relationship." *Chicago Title Ins.* 832 So. 2d at 814. No liability will attach unless it is established "that the defendant intended to procure a breach of the contract." *Id.* Importantly, "[o]ne does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." *Martin Petroleum Corp. v. Amerada Hess Corp.*, 769 So. 2d 1105, 1107 (Fla. 4th DCA 2000) (quoting Restatement (Second) of Torts § 766 cmt. n (1977)). As noted by the Fourth District, Florida follows this section of the Restatement in these circumstances. *Id.*

Defendants strenuously dispute that they knew about any enforceable contractual relationship between Planet and Wild Bill's, much less one that included an exclusivity provision. *Jay v. Mobley*, 783 So.2d 297, 299 -300 (Fla.App. 4 Dist., 2001) (quoting *Int'l Expositions, Inc. v. City of Miami Beach*, 274 So.2d 29, 31 (Fla. 3d DCA 1973) (holding that Florida "recognizes competition between competitors, and if there is an interference with a non-exclusive right this is a privileged interference.")

Defendants further strenuously dispute that they interfered with the alleged contractual relationship between Plaintiff and Wild Bill's by as Planet claims inducing Wild Bill's to breach its contract with Planet. Finally Defendants dispute that they intended to induce Planet to breach any such contract. Indeed, all of the available evidence conclusively establishes that Wild Bill's,

through Mr. Dalton, first contacted BigTrak and Mr. Kerr seeking a replacement hand held electronic bingo unit, not the other way around. Mr. Dalton testified under oath in a declaration and in deposition testimony that he first contacted BigTrak on Wild Bill's behalf because Wild Bill's was not satisfied with Planet's unit. (Jackson Decl. Ex. E, Dalton Dep'n. at 44:12—46:08, Ex. F, Dalton Decl. ¶ 5-7; Kerr Decl. ¶ 6.) Critically, Mr. Kerr only went to visit Wild Bill's (on BigTrak's behalf) after Mr. Dalton specifically requested that he do so. Neither BigTrak nor any of the individual Defendants, who were all working for BigTrak, intended to interfere with Wild Bill's relationship with Plaintiffs; nor did they so interfere. (*See* Kerr Decl. ¶¶ 6-7, Von Drasek Decl., 4, Stevens Decl. ¶ 4.)

Where, as here, it is undisputed that a third party first contacted the defendant accused of interference with contract, and not vice-versa, as a matter of law, there can be no interference. *Martin Petroleum Corp.,* 769 So.2d at 1107 (Fla.App. 4 Dist.,2000) ("because it was undisputed that Bamco approached Hess, and not vice-versa, as a matter of law there was no interference and entered a summary judgment for Hess"). This is so even where the defendant knew that the entity would be breaching a contract with someone else to enter into the agreement with the defendant. In *Martin Petroleum*, the Court squarely held:

> the only two people having any knowledge about the issue, the owner of Bamco and the Hess representative, testified that Bamco initiated the contact with Hess. Under comment *n,* even if Hess had known Bamco would be breaching a contract with Martin by purchasing its gasoline from Hess, Hess would not be liable under the facts in this case."

*Id.* The same is true here. Defendants have introduced deposition testimony and a declaration from Mr. Dalton of Wild Bill's stating unequivocally and repeatedly that *he approached BigTrak's representatives, not the other way around.* (Jackson Decl. Exs. F and E at 44:12—46:08.) There is no evidence to the contrary. Accordingly, Defendants must prevail as a matter of law and Planet cannot set forth a prima facie case to the contrary. *Martin Petroleum Corp.* 769 So.2d at 1107.

Simply put, Wild Bill's decision to sever its relationship with Planet was made independently of and prior to its interaction with any of the Defendants. (Jackson Decl. Ex. E at 44:12—46:08, Ex. F ¶ 5-7; Kerr Decl. ¶ 6.) Indeed, Wild Bill's Bingo expressly told BigTrak that they did not have an enforceable contract with Plaintiff. (Kerr Decl. Ex. A.) There is simply no evidence to the contrary. Planet knows the true facts because Planet's counsel previously deposed Mr. Dalton and Wild Bill's in Florida. He also lost a series of similar Motions filed in other courts based on these identical facts.

### (ii)   The Individual Defendants Are BigTrak Employees Who Cannot Be Sued For Tortious Interference

Under the corporate shield doctrine, "acts of [a] corporate employee performed in [his] corporate capacity do not form the basis for jurisdiction over [the] corporate employee in his individual capacity." *Rensin v. State, Office of Atty. Gen., Dept. of Legal Affairs*, 18 So.3d 572 (Fla.App. 1 Dist., 2009) (quoting *Doe v. Thompson*, 620 So.2d 1004, 1005 (Fla.1993)); *see also Estabrook v. Wetmore*, 129 N.H. 520, 529 A.2d 956 (1987)). The Florida Supreme Court adopted the rationale of the *Estabrook* court which reasoned that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Rensin*, 18 So.3d at 575 (citing *Estabrook*, 529 A.2d at 959). The corporate shield doctrine applies to a nonresident who acts in a representative capacity on behalf of a limited liability company such as BigTrak. *Stomar, Inc. v. Lucky Seven Riverboat Co., L.L.C.*, 821 So.2d 1183, 1187 (Fla. 4th DCA 2002).

Here, Defendants Von Drasek, Kerr and Stevens are all alleged to be employees of BigTrak and to have performed whatever acts alleged in the Complaint on behalf of BigTrak, not for their own personal benefit. In fact, neither Mr. Von Drasek nor Mr. Stevens were involved in the negotiations with Wild Bill's, and Mr. Kerr strenuously denies any intent to induce Wild Bill's to breach any contract. In short, these Defendants cannot properly be sued in Florida under the Florida corporate shield doctrine.

14

(iii)    **Defendants Cannot Be Liable Under FDUTPA**

To state a claim for a violation of FDUTPA, a plaintiff must allege the following elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F.Supp.2d 1215, 1220 (S.D.Fla.2008). As noted, Planet alleges that the tortious interference in connection with Wild Bill's contract constitutes an "unfair practice" under FDUTPA. Such an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *North American Clearing, Inc. v. Brokerage Computer Systems, Inc.*, 666 F.Supp.2d 1299 (M.D. Fla. 2009).

Defendants' alleged interference with a single contract cannot constitute a breach of the FDUPTA as a matter of law. In analyzing whether certain acts constitute an "unconscionable practice" under the Deceptive and Unfair Trade Practices Act (DUTPA), the ordinary meaning of the noun "practice" is a habitual or customary action or way of doing something. *Beacon Property Management, Inc. v. PNR, Inc.*, 785 So.2d 564, 568 (2001), *reh'g denied, review granted* 817 So.2d 849, *quashed* 842 So.2d 773, *on remand* 890 So.2d 274, *on remand* 2006 WL 5688128. Similarly, in analyzing whether certain acts constitute an "unfair method of competition" or an "unconscionable practice" under FDUTPA, a single instance of doing something does not make it a method or a practice. *Id.* There is nothing unconscionable about Defendants' alleged conduct, even assuming that they induced Wild Bill's to breach its contract (and the facts establish conclusively that they did not). In addition, since the alleged conduct was "a single instance of doing something," there was no method or practice that could be actionable under FDUTPA as a matter of law.

Moreover, wholly conclusory allegations such as those in Planet's Complaint, cannot state a claim under FDUTPA. *Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, Slip Copy, 2010 WL 2821950 (M.D.Fla. 2010). A plaintiff cannot satisfy this requirement by merely attaching the label "unfair and deceptive" to acts that do not fall within the scope of this section. *See Marco Island Cable, Inc. v. Comcast Cablevision of the S., Inc.*, 2006 WL

15

1814333, at 6-10 (M.D.Fla. 2006). "Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)." *Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1322 (M.D.Fla.2002). "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Akzo,* 2010 WL 2821950 (citing *Fla. Digital Network v. N. Telecom. Inc.*, 2006 WL 2523163, *5 (M.D.Fla. August 30, 2006)).

Planet cannot establish a *prima facie* case as to the FDUTPA claim for yet another reason. Planet is not a "consumer" within the meaning of the statute. FDUTPA "only permits consumers to bring actions seeking monetary relief." *Burger King Corp. v. Ashland Equities, Inc.,* 161 F.Supp.2d 1331, 1338 (S.D. Fla. 2001) (quoting *Warren Tech., Inc. v. Hines Interests Ltd. P'ship,* 733 So.2d 1146, 1148 (Fla. 3d DCA 1999)). The term "consumer" means "one engaged in the *purchase* of goods or services." *Id.* (citing *N.G.L. Travel Assoc. v. Celebrity Cruises, Inc.*, 764 So.2d 672, 674 (Fla. 3d DCA 2000). Where, as here, the plaintiff was not in engaged in the *purchase* of a product, the plaintiff is not a "consumer" under FDUTPA. *See id.*

    b.    <u>Planet's Allegations of General Jurisdiction Fail (48.193(2). Fla. Stat.)</u>

Planet alleges that this Court has general personal jurisdiction over BigTrak pursuant to §48.193(2), Fla. Stat., "in that Defendants transact business activities within the State of Florida, including within this judicial district, as alleged herein." (Compl., ¶ 7). Planet is wrong. The applicable provision of the Florida long-arm statute allows for personal jurisdiction over a defendant "who is engaged in substantial and not isolated activity within this state," whether or not the claim alleged arose from that activity. "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Meier v. Sun International Hotels. Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002) (citing *Consolidated Development Corporation v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000), *cert. denied,* 534 U.S. 827 (2001)). Indeed, Florida's long arm statute "requires more activities or contacts to confer personal jurisdiction over a foreign defendant than those

16

demanded by the due process clause." *Williams Electric Co. v. Honeywell, Inc.* 854 F. 2d 389 (11th Cir. 1988).

There are no allegations in the Complaint about any systematic and continuous general business contacts between any of the Defendants herein and Florida.  There are no allegations about activities or contacts which would give rise to such jurisdiction.  This is not surprising because none of the Defendants engage in the type of systematic and continuous general business contacts contemplated by the relevant Eleventh Circuit law.

As noted above, BigTrak is a limited liability company organized and existing under the laws of the State of Texas, with offices in Corpus Christi, Texas, Chicago, Illinois and Columbia, South Carolina.  BigTrak is not a resident of Florida, is not registered, licensed or authorized to do business in Florida, does not have any offices in Florida, does not have any employees resident in Florida, does not regularly solicit business in Florida, has never paid taxes in Florida, does not own real property in Florida, has no bank account in Florida, and does not otherwise have any meaningful contact with Florida.  Thus, BigTrak does not engage in the type of systematic and continuous general business contacts contemplated by the relevant Eleventh Circuit law.

BigTrak does have a contract with Wild Bill's, a Florida resident, in which BigTrak leases electronic bingo equipment.  However, the fact that BigTrak, a foreign defendant, contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant under the Florida long-arm statute. *Walack v. Worldwide Machinery Sales, Inc.*, 278 F.Supp.2d 1358 (M.D.Fla.2003); *see also Voorhees v. Cilcorp, Inc*, 837 F.Supp. 395, (M.D.Fla.1993) (existence of contractual relationship between nonresident defendant and Florida resident is not sufficient, standing alone, to provide minimum contacts required by due process for exercise of personal jurisdiction); *Powercerv Technologies Corp. v. Ovid Technologies, Inc.*, 993 F.Supp. 1467 (M.D.Fla.1998) (low percentage sales of unrelated products in state are insufficient to confer general jurisdiction over defendant under Florida's long-arm statute).

Similarly, Mr. Kerr's contacts with Florida are also non-existent. (*See generally* Kerr Decl.) He resides in Texas. (*Id.* ¶ 2.) He does not reside in or pay taxes in Florida. (*Id.* ¶ 4.) He conducts very little if any business in Florida. (*Id.*) He rarely, if ever, travels to Florida. (*See id.*) Likewise, neither Mr. Von Drasek nor Mr. Stevens have any meaningful contact with Florida, much less the continuous and systematic contact required to impose general *in personam* jurisdiction over them. (Von Drasek Decl. ¶ 3; Stevens Decl. ¶3.)

      c.    There Is No Due Process To Hail Defendants Into Florida Court

Given that Planet cannot satisfy the requirements of Florida's long-arm statute, it is not necessary for this Court to address the further issue of whether the imposition of personal jurisdiction over the Defendants would satisfy the requirements of federal due process. *Prentice v. Prentice Colour*, 779 F. Supp at 588-89 ("Since Florida's long arm jurisdictional requirements have not been met for either general or specific jurisdiction, a due process analysis is unwarranted.")

However, even if the exercise of personal jurisdiction over any of these defendants were proper under Florida's long-arm statute (which it is not under any theory advanced by Planet), such exercise would nevertheless violate Defendants' right to due process of law under the Fourteenth Amendment to the U.S. Constitution. Whether due process allows assertion of jurisdiction over a foreign defendant requires proof both that the Defendants have sufficient "minimum contacts" with the state, and that the exercise of jurisdiction by this Court would not offend "traditional notions of fair play and substantial justice." *Sculptchair*, 94 F.3d at 630-31; *Madara v. Hall*, 916 F. 2d at 1515-1516. "Minimum contacts" involves three criteria: (a) the contacts must be related to the plaintiff's cause of action or have given rise to it; (b) the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws; and (c) the contacts must be such that the defendant should reasonably anticipate being haled into court here. *Sculptchair*, 94 F.3d at 631. None of those criteria are fulfilled here.

Florida courts have applied this principle where appropriate. *See, e.g., Kim Yong Lung Indus. Co. v. Temple*, 816 So.2d 663 (Fla. 2d DCA 2002), In *Kim Yong*, the manufacturer's affidavit, just as does Defendant BigTrak's here, indicated that the defendant challenging jurisdiction had no offices, employees, property, or systematic activities within Florida. Also instructive is a recent decision in the Middle District. *See Bullard Abrasives. Inc. v. Taiwan Resibon*, 9009 U.S. Dist LEXIS 55242 (M.D. Fla. 2009). The relevant facts in *Bullard* are similar to the facts in the instance case. The *Bullard* court declined to find that the Middle District had personal jurisdiction over a Taiwanese company which had little ties to Florida.

B.   PLANET'S CLAIMS SHOULD BE DISMISSED UNDER FRCP 12(b)(6)

   1.   **Legal Standard**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, --, 127 S.Ct. 2499, 2509 (2007) (citation omitted); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993). In determining the merits the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs*, 127 S.Ct. at 2509 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, --U.S. --, 129 S.Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## 2. Planet's First Claim for Tortious Interference With Contract Does Not State A Claim For Which Relief Can Be Granted

### a. None of the Defendants Induced Wild Bill's To Breach Its Contract With Planet As A Matter of Law

As noted above, under Florida law, the elements to claim for intentional interference with a contract are as follows: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. *Chicago Title Ins. Co.*, 832 So. 2d at 814. Imbedded within these elements is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages. *Id.* Causation requires a plaintiff to "prove that the defendant manifested a specific intent to interfere with the business relationship." *See id.* No liability will attach unless it is established "that the defendant intended to procure a breach of the contract." *Id.* Importantly, "[o]ne does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." *Martin Petroleum*, 769 So. 2d at 1107 (quoting Restatement (Second) of Torts § 766

20

cmt. n (1977)). As noted by the Fourth District, Florida follows this section of the Restatement in these circumstances. *Id.*

Planet's Complaint contains only very conclusory allegations about the various elements of the claim, including the allegations of Defendants' alleged inducement to interfere with the alleged contractual relationship between Planet and Wild Bill's. Such allegations are wholly insufficient under *Twombly* and *Iqbal*; therefore the Complaint should be dismissed.

In fact, the evidence conclusively establishes that Defendants did not interfere with the contractual relationship as a matter of law. All of the available evidence conclusively establishes that Wild Bill's by Mr. Dalton first contacted BigTrak and Mr. Kerr seeking a replacement hand held electronic bingo unit because Wild Bill's was not satisfied with Planet's unit. (Jackson Decl. Ex. E, Dalton Dep'n. at 44:12—46:08, Ex. F, Dalton Decl. ¶ 5-7; Kerr Decl. ¶ 6.) Indeed, Mr. Kerr only went to Wild Bill's, on BigTrak's behalf, after Mr. Dalton requested that he do so. Neither BigTrak nor any of the individual Defendants, who were all working for BigTrak, intended to interfere with Wild Bill's relationship with Plaintiffs; nor did they interfere. (*See* Kerr Decl. ¶¶ 6-7, Von Drasek Decl. ¶4 , Stevens Decl. ¶ 4.)

As discussed above, where as here, it is undisputed that the third party contacted the defendant accused of interference with a contract, and not vice-versa, as a matter of law there was no interference. *Martin Petroleum Corp.,* 769 So.2d at 1107 (Fla. 4th DCA 2000) ("because it was undisputed that Bamco approached Hess, and not vice-versa, as a matter of law there was no interference and [the court] entered a summary judgment for Hess").

Simply put, it cannot be disputed that Wild Bill's decision to sever its relationship with Planet was made independently of and prior to its interaction with any of the Defendants. (Jackson Decl. Ex. E, Dalton Dep'n. at 44:12—46:08, Ex. F, Dalton Decl. ¶ 5-7; Kerr Decl. ¶ 6.) Indeed, Wild Bill's expressly told BigTrak that they did not have an enforceable contract with Plaintiff. (Kerr Decl. Ex. A.) There is simply no evidence whatsoever to the contrary. Planet knows the true facts because Planet's counsel previously deposed Mr. Dalton and Wild Bill's in

21

Florida. Summary judgment should be granted as to this claim on that ground. The Complaint should be dismissed (or alternatively summary judgment granted) on this ground.

### b. The Individual Defendants Are BigTrak Employees Who Cannot Be Sued For Tortious Interference

As discussed above, under the corporate shield doctrine, "acts of [a] corporate employee performed in [his] corporate capacity do not form the basis for jurisdiction over [the] corporate employee in his individual capacity." *Rensin*, 18 So.3d at 575 (quoting *Doe v. Thompson, supra*, at 1005 (citing *Estabrook, supra*)). The Florida Supreme Court adopted the rationale of the *Estabrook* court which reasoned that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Rensin*, 18 So.3d at 575 (citing *Estabrook*, 529 A.2d at 959). The corporate shield doctrine applies to a nonresident who acts in a representative capacity on behalf of a limited liability company such as BigTrak. *Stomar*, 821 So.2d at 1187.

Here, Defendants Von Drasek, Kerr and Stevens are all alleged to be employees of BigTrak and to have performed whatever acts alleged in the Complaint on behalf of BigTrak, not for their own personal benefit. In fact, neither Mr. Von Drasek nor Mr. Stevens were involved in the negotiations with Wild Bill's, and Mr. Kerr strenuously denies any intent to induce Wild Bill's to breach any contract. In short, these Defendants cannot properly be sued in Florida under the Florida corporate shield doctrine. The Motion to Dismiss should be granted on that ground and alternatively summary judgment be granted on behalf of all Defendants.

### c. Defendants Cannot Be Liable Under FDUTPA

As discussed above, to state a claim for a violation of FDUTPA, a plaintiff must allege the following elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Sundance Apartments I*, 581 F.Supp.2d at 1220. Planet alleges that the tortious interference in connection with the Wild Bill's contract constitutes an "unfair practice" under FDUTPA. Such an unfair practice is one that offends established public policy and one that is

immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *North American Clearing, Inc.,* 666 F.Supp.2d 1299.

Defendants' alleged interference with a single contract cannot constitute a breach of the FDUPTA as a matter of law for the reasons discussed above. In analyzing whether certain acts constitute an "unconscionable practice" under the Deceptive and Unfair Trade Practices Act (DUTPA), the ordinary meaning of the noun "practice" is a habitual or customary action or way of doing something. *Beacon Prop. Mgmt., Inc.,* 785 So.2d 564. Similarly, in analyzing whether certain acts constitute an "unfair method of competition" or an "unconscionable practice" under FDUTPA, a single instance of doing something does not make it a method or a practice. *See id.* There is nothing unconscionable about Defendants' alleged conduct as a matter of law, even assuming that they induced Wild Bill's to breach its contract (and the facts establish conclusively that they did not). *See Jay,* 783 So.2d 299 -300 (holding competition privilege recognized in Florida). In addition, since the alleged conduct was "a single instance of doing something," there was no method or practice that could be actionable under FDUTPA as a matter of law.

Moreover, wholly conclusory allegations such as those in Planet's complaint cannot state a claim under FDUTPA. *Akzo Nobel Coatings, Inc.,* 2010 WL 2821950. A plaintiff cannot satisfy this requirement by merely attaching the label "unfair and deceptive" to acts that do not fall within the scope of this section. *See Marco Island Cable, Inc., 2006* WL 1814333, at *6-10. "Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)." *Stires,* 243 F.Supp.2d at 1322. "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Akzo,* 2010 WL 2821950 (citing *Fla. Digital Network v. N. Telecom. Inc.,* 2006 WL 2523163, *5 (M.D.Fla. August 30, 2006)).

In addition, Planet is not a "consumer" within the meaning of the statute as a matter of law and the claim fails for that additional reason. FDUTPA "only permits consumers to bring actions seeking monetary relief." *Burger King Corp.,* 161 F.Supp.2d 1331. The term "consumer" means "one engaged in the *purchase* of goods or services." *Id.* (citing *N.G.L. Travel*

23

*Assoc.*, 764 So.2d at 674).   Where, as here, the plaintiff was not in engaged in the *purchase* of a product, the plaintiff is not a "consumer" under FDUTPA.   *See id.*   For all of these reasons, the FDUPTA claim should be dismissed against all Defendants.   Alternatively, summary judgment should be granted.

### d.   Plaintiff Has Impermissibly Pled its Claims Against all Defendants as a Group

A defendant cannot simply 'lump' all the defendants together and allege that the purported acts of every defendant can be imputed to every other defendant."   *Medina v. Bauer*, No. 02 Cave 8837(DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004).   Such group pleading "creates confusion and makes the analysis [of the complaint] unnecessarily burdensome."   Court *Appointed Receiver v. Cutco Group Ltd.*, No. 05-60080-Civ, 2008 WL 926512, at *3-4 (S.D. Fla. March 31, 2008).   Here, not only are the Defendants lumped together in an indistinguishable manner, the facts are also pled as mere legal conclusions in violation of *Iqbal*.   In paragraph 70, for example, Plaintiff avers: "Kerr, Von Drasek, Stevens, and BigTrak have engaged in unfair and deceptive trade practices which have been substantially injurious to other businesses and competitors and which offend public policy."   (Compl. ¶ 70.)   No actual facts are alleged to support this legal conclusion.   The same pleading flaws are found in paragraphs 63 through 72, or in other words, all salient allegations made against each defendant under each cause of action. (*See* Compl. ¶¶ 63-72.)

### C.   SUMMARY JUDGMENT IS ALSO WARRANTED

The declarations and attached materials submitted herewith are in support of Defendants Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).   To the extent that the Court is inclined to rule that Planet cannot possibly state a claim for which relief can be granted on the basis of those same materials, the Court may wish to convert the Motion into a Motion for Summary Judgment.   *See e.g. Lewis v. Asplundh Tree Expert Co.* 305 Fed. Appx. 623, 628, 2008 WL 5411565, *4 (11th Cir. 2008).   Summary judgment is warranted here as Plaintiff enjoyed a full opportunity for discovery in its action for breach of the underlying contract in its case against Wild Bill's Bingo in *Wild Bill's Bingo II*.   Plaintiff has, for example,

already deposed the most critical witness, Bill Dalton, the principal of Wild Bill's. The only other witnesses are Defendants and they have all submitted declarations in support of the instant Motion to Dismiss detailing the material facts. Also, a declaration from Mr. Dalton has been submitted that was filed in another Planet case against BigTrak et al that is entirely consistent with his deposition testimony (which occurred after the declaration was filed and which Planet had at the time of his deposition.) (*Compare* Jackson Decl. Ex. F and Ex. E at 44:12—46:08.) There are simply no facts to the contrary that could possibly be discovered. The key witness has been deposed. There is no evidence to the contrary. There is no suggestion that any of the Defendants would testify in any way different than their declarations or even that anything in their declarations is not correct. There is nothing inconsistent with their declarations and Mr. Dalton's deposition testimony.

### D.   **MOTION TO POST BOND**

In the event the Court is not inclined to dismiss the FDUPTA claim for lack of personal jurisdiction or for the failure to state a claim (or for summary judgment), Defendants request that the Court require that Planet post a bond under § 501.211(3), Fla. Stat. for the amount of attorneys' fees that will be incurred if the FDUPTA claim proceeds on the ground that the FDUPTA claim is frivolous and without any legal or factual merit whatsoever and is brought for the purposes of harassment. Section 501.211, Fla. Stat. states in relevant part as follows:

> (3) In any action brought under this section, upon motion of the party against whom such action is filed alleging that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may, after hearing evidence as to the necessity therefore, require the party instituting the action to post a bond in the amount which the court finds reasonable to indemnify the defendant for any damages incurred, including reasonable attorney's fees. This subsection shall not apply to any action initiated by the enforcing authority.

For the reasons discussed above, Planet cannot hope to prevail on its meritless FDUPTA claim. Planet should therefore be required to post a bond in the amount of $80,000, which is a reasonable estimate of the attorneys' fees that would be incurred to litigate the claim through

25

summary judgment. Such fees would include the cost of depositions, attorney time, the preparation of legal briefs, correspondence and the attendance at court hearings.

## IV.   **CONCLUSION**

For all the foregoing reasons,  the instant Motion to Dismiss should be granted with prejudice as it could not possibly be saved by amendment. *Defendants' hereby respectfully request oral argument.*

### CERTIFICATE OF COMPLIANCE

Pursuant to the Local Rule, and in an abundance of caution, counsel for Defendants has tried to confer with Plaintiff's attorney to resolve the issues raised in this Motion to Dismiss and Supporting Memorandum of Law, however, no agreement could be reached.

### CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2010 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and notice of electronic filing by first-class mail to any non-CM/ECF participants:

Jeffrey Lloyd Weiss
Weiss & Moy PC
4204 N. Brown Ave
Scottsdale, AZ 85251

Karen Jeanne Sepura Fouts
Weiss & Moy PC
40 Pearl St., NW STE 920
Grand Rapids, MI 49503

/s/ Richard M. Dunn
RICHARD M. DUNN

26