**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

PLANET BINGO, LLC,
a California limited liability company,

                        Plaintiff,

    v.

MICHAEL KERR, an individual;
RANDY VON DRASEK, an individual;
ROY M. STEVENS, JR., an individual; and
BIGTRAK TECHNOLOGIES, LLC, a Texas
limited liability company,

                   Defendants.

Case No. 5:10-cv-00315-RS-EMT

**PLAINTIFF PLANET BINGO, LLC'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(2) AND 12(b)(6),**
**AND MOTION TO POST BOND UNDER § 501.211**

       Plaintiff Planet Bingo, LLC ("Planet Bingo"), by and through its undersigned

counsel, hereby submits its Response in Opposition to Defendants' Motion to Dismiss

Under FRCP 12(b)(2) and 12(b)(6) and Motion to Post Bond Under § 501.211.  For the

reasons stated in the accompanying Memorandum, Defendants' motion should be denied

in its entirety.

## I.  INTRODUCTORY STATEMENT

By this shotgun motion, Defendants launch a barrage of attacks against Plaintiff's Complaint.  None have merit.  Thus, Defendants assert a lack of personal jurisdiction, even though there is no dispute that the claims arise out of the interference with a contract with a Panama City bingo hall, so that Defendants could enter into a contract with that same hall to provide continuing bingo services in this judicial district -- and have been doing so for more than a year.  Defendants also seek the dismissal of Plaintiff's claims under Rule 12(b)(6), yet that challenge relies on deposition testimony, four declarations, and a document -- all of which are evidence that is outside the four corners of the Complaint and thus irrelevant to the adjudication of a Motion to Dismiss for Failure to State a Claim.  Finally, Defendants seek summary judgment prior to *any* discovery in this action, and thus without affording Plaintiff any opportunity to conduct discovery to support its claims.

Plaintiff respectfully submits that Defendants' Motion, the sole apparent purpose of which is to delay the resolution of these proceedings, should be denied in all respects.

## II.  FACTUAL BACKGROUND

### A.  Planet Bingo

Planet leases to bingo halls around the country a variety of electronic bingo equipment, including a handheld device known as the PhD™ and a fixed base device unit known as the OneTouch™.  (Compl., ¶¶ 10-11.)  The leased equipment is used by Planet's customers to permit the play of electronic bingo at their halls.  (*Id.* at ¶ 11.)  In general, Planet's VBS includes, among other things, the PhD™.  (*Id.*)

### B.  Planet's Former Employees

Two of the individual defendants named in Planet's Complaint -- Mike Kerr and Randy Von Drasek -- were longtime employees of Planet.  Declaration of Rick White

1

("White Dec."), ¶ 3.  Von Drasek was employed as a software engineer for over six years (from May 3, 2000 to September 1, 2006).  (*Id.*)  During that time, he was involved in all aspects of software development for Planet.  (*Id.*)  Among other things, he wrote computer code for the PhD™.  (*Id.*)  Defendant Kerr was employed as a salesman with Planet until September 1, 2006.  (*Id.* at ¶ 4.)  During the course of his employment, Kerr offered to provide the PhD™ (among other products) to current and prospective Planet customers.  (*Id.*)  In addition, Kerr routinely participated in high-level discussions regarding the development of new products and had broad access to Planet's confidential and trade secret information, including the proprietary information related to the PhD™.  (*Id.*)

### C.  Big Trak

Kerr and Von Drasek left Planet on the same day (September 1, 2006).  (White Dec. ¶ 5.)  Within a few short months and following a meeting in Florida, the two former employees, together with Defendant Stevens, had formed a new company, BigTrak.  (Compl., ¶¶ 32-33, 35.)

As alleged in a currently pending lawsuit between Planet on the one hand and Von Drasek, Kerr, Rios, and BigTrak on the other, BigTrak's sole hardware product is an electronic bingo device called "iBingo," which was developed using confidential, copyrighted and trade secret information misappropriated from Planet, a California corporation.  *See Planet Bingo, LLC and Planet Bingo, Inc. v. Randy Von Drasek, Mike Kerr, and Javier Rios*, CV08-4822 GW (FMOx) (U.S. District Court, Central District of California) (the "Federal Action").  (Compl., ¶ 41.)

### D.  The Contractual Relationship Between Planet and Wild Bills

In June of 2004, Planet and Wild Bill's Bingo entered into a Video Bingo Placement Agreement (the "2004 Agreement"), pursuant to which Planet agreed to place

its VBS at Wild Bill's bingo hall ("Wild Bills") in Florida.  (White Dec., Ex. A.)  Kerr

negotiated that agreement and, during his employment with Planet, had primary

responsibility for servicing that relationship.  As indicated by emails that he authored while

at Planet, he clearly had intimate knowledge of the details of the relationship.  (*Id.* at ¶ 10,

Exs. C-D.  Once the contractual relationship was established, Kerr met on numerous

occasions with the President of Wild Bills -- in person -- to service the parties' contractual

relationship.  (*Id.*)  It is not possible for Kerr to have been ignorant of the existence of the

contractual relationship between Planet and Wild Bills, or of the details of that relation-

ship, as his declaration submitted in support of this Motion implies.  (White Dec., ¶ 9.)

The 2004 Agreement provided for weekly payments by Wild Bills to Planet for the

use of the VBS.  (*Id.* at Ex. A, Schedule A.)  In May of 2007, Planet and Wild Bills entered

into a second Video Bingo Placement Agreement (the "2007 Agreement").  (*Id.* at Ex. B.)

The contracts, the terms of which were "confidential," made Planet Bingo the exclusive

provider of VBS to Wild Bills.  *Id.*

On September 14, 2009, Wild Bills unilaterally terminated the 2007 Agreement,

even though it did not have a termination right.  (*Id.* at ¶ 11.)  As alleged in the complaint,

this was at the encouragement of the Defendants.  The termination's purpose was to clear

the way for Wild Bills to terminate its relationship with Planet, and to replace the Planet

VBS at Wild Bills with the iBingo device, at a lower cost, in violation of the contract's

exclusivity provision.  (Compl., ¶¶ 42-51.)  Planet brought suit against Wild Bills for

breach of the 2004 and 2007 Agreements, in a matter entitled *Planet Bingo, LLC v. Wild

Bill's Bingo, Inc.*, Case No. 5:10-cv-64/RS-MD (the "Wild Bill's Action").  (Compl., ¶

57.)  In that action, and following the filing of a motion for summary judgment, Planet

Bingo obtained judgment against Wild Bills in the amount of $682,907, plus attorneys' fees and interest.

When Wild Bills installed the iBingo color handset at its facility in September of 2009, Von Drasek, Kerr, and Rios were personally present. Declaration of David Forman ("Forman Dec."), ¶ 2. In the Declaration of Mike Kerr submitted in support of this Motion, Kerr states that he visited the Wild Bills location in August of 2009; i.e. the month *prior* to the purported termination of the contractual relationship between Planet and Wild Bills. While there, Kerr would have certainly seen Planet's equipment. Based on his prior experience with Planet, Kerr would have known (as would Von Drasek and Rios) that the presence of Planet's equipment in a bingo hall meant the continued existence of a contract between Planet and Wild Bills. (White Dec., ¶ 10.)

## III. ARGUMENT

### A. This Court has Personal Jurisdiction Over the Defendants

#### 1. Legal Standard

A federal court sitting in diversity "may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). The jurisdictional analysis requires a court to first "determine whether the Florida long-arm statute provides a basis for personal jurisdiction. If so, then [it] must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (citation omitted).

General jurisdiction pursuant to Florida Statute § 48.193(2) is appropriate over a nonresident defendant having "'substantial and not isolated activity within' Florida, even when that activity is unrelated to the cause of action being litigated." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006) (citation omitted). "[S]ubstantial and not isolated activity" means "continuous and systematic general business contact." *Autonation, Inc. v. Whitlock*, 276 F.Supp.2d 1258, 1262 (S.D. Fla. 2003) (citation omitted). "This 'continuous and systematic' contacts requirement is sufficient to fulfill the constitutional due process requirements of minimum contacts." *Id.* Such contacts "must be 'considered collectively and show a general course of business activity in the State for pecuniary benefit.'" *Stubbs*, 447 F.3d at 1361 (citations omitted).

A court may exercise specific jurisdiction over a nonresident defendant pursuant to Florida Statute § 48.193(1) when a defendant's contacts with Florida arise from or directly relate to the cause of action. *Perry Ellis Int'l, Inc. v. URI Corp.*, 2007 U.S. Dist. LEXIS 16000 (S.D. Fla. Mar. 7, 2007). In this context, "[t]he term 'arising from' is broad; it does not mean 'proximately caused by,' but only requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity." *Citicorp Ins. Brokers v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994) (citation omitted).

If a court determines jurisdiction to be appropriate under the long-arm statute, it must consider whether exercising jurisdiction would be appropriate under the Constitution. This part of the analysis asks whether a defendant has certain minimum contacts with the forum, "such that he should reasonably anticipate being haled into court there." *Achievers Unlimited v. Nutri Herb*, 710 So. 2d 716, 719 (Fla. 4th DCA 1998) (citations omitted). A court must also consider whether it is fair to require the defendant to defend the suit in the

forum state.  *See Meier*, 288 F.3d at 1276.  The requirement for minimum contacts "is satisfied if the defendant purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." *Achievers Unlimited*, 710 So. 2d at 719.

In determining whether jurisdiction comports with traditional notions of fair play and substantial justice, the following factors are considered:  "(a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies." *Meier*, 288 F.3d at 1276.

Overall, in determining a motion under Rule 12(b)(2), the facts alleged in the complaint are accepted as true, to the extent they are uncontroverted by the defendant's affidavits.  *Stubbs*, 447 F.3d at 1360.  When a defendant provides affidavits contrary to the complaint allegations, the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier*, 288 F. 3d at 1269.  Where conflicts exist between plaintiff's complaint and supporting evidence and defendant's affidavits, a court must construe all reasonable inferences in favor of the plaintiff.  *Id.*

### 2.  This Court has General Jurisdiction Over BigTrak

The Motion asserts that Defendants do not engage in systematic and continuous general business contacts with Florida.  *See* Motion, p. 17.  In the same breath, however, Defendants acknowledge BigTrak's ongoing contractual relationship with Wild Bill's, a Florida company based in Panama City.   Through that relationship, which has existed

6

since at least September of 2009, BigTrak "leases" its equipment (Kerr Dec. (Doc. 12-8) ¶ 6) to Wild Bill's. Thus, equipment *owned by BigTrak* is situated in the Florida hall. *See* 2009 Kerr Dec. ¶ 7, attached as Ex. A to Fouts Dec. submitted herewith.

Further, Wild Bill's is not BigTrak's only Florida business activity. Indeed, BigTrak has engaged in business activities with respect to other Florida-based bingo halls. Based on discovery responses that Planet's counsel has received in the California Action, Planet will be able to demonstrate to the Court that Defendants have multiple business activities in Florida and have solicited other Florida business, dating from at least as early as October of 2007 – well before BigTrak entered into the contract with Wild Bill's in September of 2009. Such activities include soliciting and entering into contractual relationships with entities in Florida, travelling to Florida, installing BigTrak equipment in Florida bingo halls, and training staff in Florida.[1] Taken as a whole, it is clear that BigTrak undertakes substantial and not isolated activity within Florida, and its assertion to the contrary is simply an effort to mislead the Court. Its Florida activities are sufficient for this Court to exercise personal jurisdiction over it generally. Fla. Stat. § 48.193(2).

### 3. This Court has Specific Jurisdiction Over All of the Defendants

In the alternative and at a minimum, this Court has specific personal jurisdiction over BigTrak, and it has specific personal jurisdiction over the individual defendants.

#### a. Defendants Are Accused of Tortious Acts in Florida

With respect to tortious acts, specific jurisdiction attaches where a defendant commits a tortious act within this state. *See* Fla. Stat. § 48.193(1)(b). Thus, Florida courts

---

[1] These discovery responses have been designated as Attorneys' Eyes Only and are subject to a Protective Order in the California Action. Thus, they cannot be submitted with this Opposition. Planet respectfully submits that it would be appropriate for a protective order to be entered in this case so that these materials may be filed under seal.

routinely exercise personal jurisdiction over nonresident defendants accused of committing tortious acts in Florida.  *See, e.g., Chase Manhattan Bank v. Cebeck*, 505 So. 2d 539, 541 (Fla. 1st DCA 1987) (where complaint alleged that defendant tortiously interfered with a business relationship concerning plaintiff's offer to purchase certain real property located in Florida, the alleged facts were sufficient to establish jurisdiction under Fla. Stat. § 48.193(1)(b)); *Lehigh Techs., Inc. v. Farrah*, 2009 U.S. Dist. LEXIS 4838 (M.D. Fla. Jan. 23, 2009) (Plaintiff manufacturer's allegations that defendant principal of defendant competitors made numerous misrepresentations from Michigan to the manufacturer in Florida by telephone and fax, and tortiously interfered with its business, satisfied Fla. Stat. § 48.193(1)(b) for personal jurisdiction); *Office of the AG, Dep't of Legal Affairs v. Wyndham Int'l*, 869 So. 2d 592 (Fla. 1st DCA 2004) (reversing dismissal for lack of personal jurisdiction of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") suit against corporation's senior vice-president and vice-president who had initiated and implemented a plan to charge an energy surcharge in the corporation's hotels, including those in Florida); and *Execu-Tech Bus. Sys. v. New Oji Paper Co.*, 752 So. 2d 582 (Fla. 2000), *cert. denied* 531 U.S. 818, 121 S. Ct. 58, 148 L. Ed. 2d 25 (2000) (personal jurisdiction over foreign corporation was proper pursuant to Fla. Stat. § 48.193(1) because corporation committed tortious act by engaging in price fixing in violation of FDUTPA).

A tort claim "is deemed to have accrued where the last event necessary to make the defendant liable for the tort took place."  *Tucker v. Fianson*, 484 So. 2d 1370 (Fla. 3d DCA) rev. denied, 494 So. 2d 1153 (Fla. 1986).  "In other words, a tort accrues where the plaintiff first suffers injury."  *Williams v. Goldsmith*, 619 So. 2d 330, 332 (Fla. 3d DCA 1993).

Here, the Complaint includes tort causes of action against Defendants, for interference with contract and violation of FDUTPA, and alleges that the tortious acts

occurred with respect to Planet's relationship with its customer, Wild Bill's, located in Panama City.  Planet alleges that Defendants tortiously interfered with its contractual relationship with Wild Bill's, and that as a result, Wild Bill's improperly terminated its contract with Planet.  Planet's initial injury -- the loss of its customer, Wild Bill's -- occurred in Panama City, where Wild Bill's is located and where Defendants' tortious acts were directed.  Defendants' intentional tortious acts committed in Florida, as alleged in the Complaint, are sufficient to exercise personal jurisdiction here.  Fla. Stat. §  48.193(1)(b).

Defendants claim -- incorrectly -- that it is "undisputed" that Wild Bill's first contacted Defendants, and not the other way around, and they assert that they thus cannot be found liable for interference with contract, relying on *Martin Petroleum Corp. v. Amerada Hess Corp.*, 769 So. 2d 1105 (Fla. 4th DCA 2000).  Defendants' reliance is misplaced.  Indeed, at least one court has cautioned against reading more into *Martin Petroleum* than it holds.  *See Morrow v. Putnal*, 2007 U.S. Dist. LEXIS 46482, *8-9 (M.D. Fla. June 27, 2007) (noting that the *Martin Petroleum* Court "determined that Hess did not interfere with the contract because it did not induce the breach….The court merely stated in dicta that 'Hess had no knowledge of the terms of the contract.'  This Court declines to read this one sentence to mean that every defendant must have specific knowledge of all essential terms of a contract to be liable for tortious interference.") (internal citations omitted).  Moreover, based on Defendants' clear awareness of Planet's relationship with Wild Bill's, Planet's interference claim involves disputed issues of material fact.  At this stage, these issues are to be construed in Planet's favor.  *Meier*, 288 F. 3d at 1269.

b.  Defendants Conduct Business Activities in Florida

With respect to a defendant's business activities, specific jurisdiction attaches if the defendant is carrying on a business or business venture in Florida either itself or through an

agent.  *See* Fla. Stat. § 48.193(1)(a) (providing that jurisdiction over a nonresident exists if the nonresident is "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.").  A defendant's activities "must be considered collectively and show a general course of business activity in the State for pecuniary benefit."  *Sculptchair*, 94 F.3d at 627 (citation omitted).  "[T]he term 'business venture' is generally applied to one subject matter or undertaking while the term 'business' is broader in scope denoting a variety of subjects, transactions or undertakings."  *Matthews v. Matthews*, 122 So. 2d 571, 573 (Fla. 2d DCA 1960).  "A 'business venture' can consist of a single project or transaction."  *Atlantis Marina & Yacht Club, Inc. v. R & R Holdings, Inc.*, 766 So.2d 1163 (Fla. 3d DCA 2000).

Here, *none* of the defendants deny that they conduct business activities in Florida -- rather, the individual defendants simply claim that they do not *regularly* do business in Florida.  With respect to BigTrak in particular, they cannot deny its Florida business activities -- as they acknowledge, BigTrak is in a contractual relationship with Wild Bill's, which is based in Panama City.  Kerr went to Florida to demonstrate products to Wild Bill's (2009 Kerr Dec. ¶ 6, Ex. A to Fouts Dec.; 2009 Dalton Dec. ¶ 7, Ex. B to Fouts Dec.), Kerr negotiated that contractual relationship (Kerr Dec. ¶ 9 (Doc. 12-8)), and both Kerr and Von Drasek were present at Wild Bill's upon the installation of the iBingo Unit.  Forman Dec. ¶ 2.  The BigTrak-Wild Bill's contract was "signed in Florida" (2009 Dalton Dec. ¶ 7) and "BigTrak's dealings with Wild Bill's were and continue to be in Panama City, Florida…."  2009 Von Drasek Dec. ¶ 4, Ex. C to Fouts Dec.

Moreover, as noted above, Wild Bill's is not Defendants' sole business activity in Florida.  Thus, even though Defendants merely assert that they do not *regularly* do business in Florida (Kerr Dec. ¶ 4, Von Drasek Dec. ¶ 3, Stevens Dec. ¶ 2), this is

misleading at best.  The fact that Defendants *do* conduct business in Florida is sufficient to confer personal jurisdiction upon them here.  Fla. Stat. § 48.193(1)(a).

c. <u>Due Process Requirements Are Met</u>

In addition to satisfying the long-arm statute, due process must be met.  *Meier* at 1274.  In this regard, defendants must have sufficient "minimum contacts" with Florida such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).  As discussed below, Defendants have such contacts here.

i. <u>Minimum Contacts</u>

In determining whether minimum contacts exist, a defendant's contacts with the forum must be related to the plaintiff's cause of action; the contacts "must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the state"; and "the defendant's contacts with the state must be such that the defendant would reasonably anticipate being haled into court [in Florida]." *Baker Electronics, Inc. v. Pentar Sys., Inc.*, 219 F.Supp.2d 1260, 1264 (M.D. Fla. 2002) (citation omitted).  The law is clear that a single contact with a forum can support jurisdiction "so long as it creates a substantial connection with the forum . . . ." *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) (citations and internal quotation marks omitted).

"[B]y committing a tort in Florida a nonresident defendant establishes 'minimum contacts' with Florida to justify the acquisition of in personam jurisdiction over him . . . ." *Godfrey v. Neumann*, 373 So. 2d 920, 922 (Fla. 1979).  *See also Benson v. Norwegian Cruise Line Ltd.*, 859 So. 2d 1213 (Fla. 3d DCA 2003) (holding that the commission of a tort in Florida is sufficient to establish long-arm jurisdiction); *Krilich v. Wolcott*, 717 So. 2d 582 (Fla. 4th DCA 1998) (holding that "the commission of a tort in Florida is sufficient

11

to establish minimum contacts"); and *Ileyac Shipping, Ltd. v. Riera-Gomez*, 899 So. 2d

1230, 2005 Fla. App. LEXIS 5455 (Fla. 3rd DCA 2005) (by committing a single tort act in

Florida, a nonresident defendant established "minimum contacts" with Florida to justify

the acquisition of in personam jurisdiction over him).  *See also Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 473 (1985) ("parties who 'reach out beyond one state and create

continuing relationships and obligations with citizens of another state' are subject to

regulation and sanctions in the other State for the consequences of their activities.").

Further, this lawsuit is a direct result of Defendants' interference with Planet's contract

with Wild Bill's and now defendant BigTrak's *own* contract with Wild Bill's -- both

contracts are with a Florida company and thus have a substantial connection to Florida.

*See McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, (1957) (stating that "[i]t is sufficient

for purposes of due process that the suit was based on a contract which had substantial

connection with that State.").

   Here, Defendants' contacts with Florida clearly arise from the causes of action in

the Complaint, in that Defendants are alleged to have tortiously interfered with Planet's

contract with its Florida-based customer.  Defendants purposefully availed themselves of

the privilege of conducting activities within Florida, by travelling to Wild Bill's in Florida,

communicating with and contracting with Wild Bill's, and installing BigTrak equipment at

the Wild Bill's facility.   Based on these activities taken as a whole, Defendants should

have reasonably anticipated the possibility of being haled into a Florida court in the event

that litigation were to arise concerning these activities.  Accordingly, even if Defendants'

conduct of interfering with Planet's contractual relationship with Wild Bill's is a single

tortious act, this act constitutes sufficient minimum contacts, and due process is met.

ii.  <u>Effects Test for Intentional Torts</u>

Where intentional torts are at issue, the due process personal jurisdiction analysis involves the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783, 789-90, (1984). *Licciardello*, 544 F.3d at 1285-86.  The "effects" test provides that due process is satisfied when the plaintiff brings suit in the forum where the "effects" or "brunt of the harm" caused by the defendant's intentional tortious activity was suffered.  *Id.* at 1285-87 (citation omitted).  Indeed, "Florida courts have long recognized that a cause of action in tort accrues where the injury to the plaintiff first occurs."  *Becker v. Hooshmand*, 841 So.2d 561, 562 (Fla. 4th DCA 2003) (citing *Williams*, 619 So.2d 330 (tortious interference with contract claim accrued where plaintiff suffered injury by loss of clients)).

Here, as discussed above, Planet's initial injury -- the loss of its customer, Wild Bill's -- occurred in Panama City, where Wild Bill's is located and where Defendants' tortious acts were directed.  Thus, the "effects" caused by Defendants' acts were suffered in Florida, in this judicial district, and due process is satisfied under this test as well.

iii.  <u>Fair Play and Substantial Justice</u>

In determining whether the exercise of personal jurisdiction meets the standards of fair play and substantial justice, the five factors listed above in Section III A.1 are considered.  Defendants have failed to show that jurisdiction by this Court would be contrary to standards of fair play and substantial justice and, indeed, they barely address these factors in their motion.

Defendants have not mentioned or even suggested that they will be burdened by having to defend a lawsuit in this forum.  Even if they had, because Planet has established that Defendants have sufficient minimum contacts, it is appropriate for suit to be maintained here.  *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114

(1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum…will justify even the serious burdens placed on the alien defendant.").  In any event, it is undisputed that Defendants have travelled to Florida for purposes of their relationship with Wild Bill's.  *See, e.g*., *Clover Sys. v. Almagran, S.A.*, 2007 U.S. Dist. LEXIS 41416, * 15 (S.D. Fla. June 7, 2007) (denying motion to dismiss for lack of personal jurisdiction and noting that there was no substantial burden on defendants where they "found it convenient to travel to Florida every year to further its business relationship").  And, "modern methods of transportation and communication have significantly alleviated" the burden of defending a lawsuit in a foreign jurisdiction.  *Stubbs*, 447 F.3d at 1364.  Accordingly, this factor weighs in favor of jurisdiction in Florida.

Regarding the forum state's interest, Florida certainly has an important interest in adjudicating this dispute.  *See Sculptchair*, 94 F.3d at 632 (noting "Florida's obvious interest in stamping out the type of nefarious economic chicanery alleged in [plaintiff's] complaint and [plaintiff's] natural interest in obtaining relief for these alleged injustices").  The alleged conduct took place in Florida, Planet lost its Florida customer, Wild Bill's, and since at least September of 2009, BigTrak has maintained a contractual relationship with Wild Bill's.  Accordingly, this factor weighs in favor of jurisdiction in Florida.

Planet certainly has an interest in obtaining convenient and effective relief for the conduct alleged in the complaint -- conduct that occurred in Florida.  With respect to the interstate judicial system's interest in obtaining the most efficient resolution of controversies, that requires that this case be maintained here.  Again, Defendants' alleged conduct took place in Florida, Planet lost its customer in Florida, and BigTrak now has as its customer Panama City-based Wild Bill's.  If the Court declines to exercise personal jurisdiction over Defendants, Planet will be forced to bring suit against them elsewhere,

which could result in a multiplicity of lawsuits with potentially inconsistent outcomes, something that should be avoided.  Accordingly, these factors weigh in favor of jurisdiction in Florida as well.

### 4.  The Individual Defendants are Not Protected by the Corporate Shield Doctrine

The individual defendants rely on the corporate shield doctrine in claiming that they cannot be sued for tortious interference nor haled into this jurisdiction.  Defendants' reliance on this doctrine is misplaced.  Indeed, as noted in *Doe v. Thompson*, a case cited by Defendants, "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction…."  620 So. 2d 1004, 1006, n.1 (Fla. 1993).  The court in *Rensin v. State*, another case cited by Defendants, explains this "intentional misconduct exception to the corporate shield doctrine."  18 So. 3d 572, 575 (Fla. 1st DCA 2009).  Thus, the corporate shield doctrine does not apply when an individual corporate officer commits an intentional, tortious act expressly aimed at a person or entity in Florida.  *See id.; see also Allerton v. Fla. Dep't of Ins.*, 635 So.2d 36, 39 (Fla. 1st DCA 1994) (affirming denial of motion to dismiss for lack of personal jurisdiction where appellant allegedly committed intentional torts aimed at Florida resident).  Moreover, "Florida courts uniformly hold that if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions, regardless of whether liability attaches to the corporation for the tort."  *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1104 (S.D. Fla. 2000).  *See also Edelstein v. Marlene D'Arcy, Inc.*, 961 So. 2d 368, 372 (Fla. 4th DCA 2007) (affirming denial of motion to dismiss for lack of personal jurisdiction and finding that

15

"the 'corporate shield doctrine' does not apply as the corporate officer himself is alleged to have committed intentional torts expressly aimed at Florida."); *First Fin. USA, Inc. v. Steinger*, 760 So. 2d 996, 997-98 (Fla. 4th DCA 2000) (holding that president of corporation was not shielded from liability for fraudulent conduct); *Scutieri v. Miller*, 605 So. 2d 972, 973 (Fla. 3d DCA 1992) (holding that corporate officers could be liable for defamation even though claim against corporation had been settled).

Here, the individual defendants are alleged to have committed intentional torts of interference with contract and unfair and deceptive trade practices, by virtue of their interference with Planet's contractual relationship with Wild Bill's, a Florida company.  As discussed above, the initial effects of Defendants' actions were felt in Florida.  *Williams*, 619 So.2d 330.  Thus, the intentional tort allegations against the individual defendants are proper and Defendants' actions, as alleged, are sufficient for proper maintenance of this suit against them in Florida.

**B.  Planet's Complaint Should Not be Dismissed**

### 1.  Legal Standard

To withstand a motion to dismiss, a claim need only be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Making this determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S.Ct. at 1950.  "Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Turnipseed v. Educational Management*, 2010 WL 140384, *1 (N.D. Cal. 2010) (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

16

337-38 (9th Cir. 1996)).

A district court errs, in the adjudication of a Rule 12(b)(6) Motion, "in considering matters beyond the face of the complaint without complying with Rule 56." *Chong v. Healthronics, Inc.*, 2008 U.S. LEXIS 15328, *2 (11th Cir. 2008). As the Eleventh Circuit has explained: "The prohibition against going outside of the facts alleged in the complaint protects against a party being caught by surprise when documents outside the pleadings are presented at that early stage." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999). While a Court ruling on a Motion to Dismiss under Rule 12(b)(6) may take judicial notice of certain publicly filed documents pursuant to Federal Rule of Evidence 201, "affidavits" are "clearly the sort of evidentiary material that is not appropriate at the 12(b)(6) stage." *Id.* at 1280. The same is true for documents that are not referenced in or central to the allegations of the Complaint -- e.g., the letter allegedly sent by Wild Bills to the Defendants that is attached to the Kerr Declaration. *Chong*, 2008 U.S. App. LEXIS 15328, *2. Deposition testimony, as well, is "extrinsic evidence of which the Court cannot take judicial notice and, therefore, [which] cannot be considered in ruling upon a Rule 12(b)(6) motion without first converting that motion to a Rule 56 motion for summary judgment." *In re Title Insurance Antitrust Litigation*, 702 F.Supp.2d 840, 885 (E.D. Ohio 2009); *see also Acceptance Insurance Co. v. American Safety Risk Retention Group, Inc.*, 2010 U.S. Dist. LEXIS 19117, *9 n. 2 ("Matters which are not subject to judicial notice, such as, for example, correspondence, declarations and deposition transcripts are not considered on a Rule 12(b)(6) motion.")[2]

---

[2] Plaintiff would be remiss if it did not point out that, as this Court has previously held in a decision granting a Motion to Dismiss under Rule 12(b)(6), "leave to amend" should be "freely given 'when justice so requires.'" *Planet Bingo, LLC v. Wild Bill's Bingo, Inc.*, 2010 U.S. Dist. LEXIS 68548, * 1 (N.D. Fla. 2010).

## 2. **Tortious Interference with Contract**

While Defendants deride the Complaint as "conclusory," they do not dispute that the Complaint pleads all of the requisite elements of a claim for intentional interference with contract. These include: "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994). Defendants' challenge, therefore, is not based on a pleading deficiency evident on the fact of the complaint; rather, it is based on the assertion that the "*evidence* conclusively establishes that Defendants did not interfere with the contractual relationship as a matter of law." Motion (Doc. 12), p. 21 (emphasis supplied).[3]

In support of this evidentiary assertion, the Motion relies upon *four* declarations (three from the defendants and one from Wild Bills), the excerpts from one deposition of the President of Wild Bills, and a document allegedly sent from Wild Bills to the Defendants. *Id*. As noted above, all of this evidence is extrinsic to the Complaint, and none of it may be considered in ruling upon the Defendants' Motion to Dismiss under Rule 12(b)(6). As pleaded, the Complaint is sufficient. *See Henao v. Professional Shoe Repair, Inc.*, 929 So.2d 723, 728 (Fla. App. 2006) (holding that interference count "states a cause of action, particularly since it alleges the existence of a contract, the defendants' knowledge of the contract, an intentional and unjustified interference with the contract by the defendants, and resultant damages").

_____

[3] With respect to the individual defendants, the Motion asserts that they may not be sued for tortious interference because their contacts with Florida were on behalf of BigTrak. This argument is addressed above, in the response to the defense Motion to Dismiss for Lack of Personal Jurisdiction.

### 3.  Florida Deceptive and Unfair Trade Practices Act

The FDUTPA prohibits "'[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'"  *Kelly v. Palmer, Reifler & Associates, P.A.*, 681 F. Supp. 2d 1356, 1372 (S.D. Fla. 2009) (quoting Fla. Stat. 502.204(1)).  The acts purpose is to "'protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'"  *Id*. (quoting Fla. Stat. 501.202(2)).  Consistent with this purpose, "the provisions of the act are to be construed liberally."  *Id*.

With respect to Planet's FDUTPA claim, as well, the Motion appears to acknowledge that the requisite elements are all set forth in the Complaint, but attacks them as "conclusory."  *See* Motion (Doc. 12), p. 23.  In addition, the Motion appears to raise two legal challenges to the FDUTPA claim -- contending that "a single contract cannot constitute a breach of the FDUTPA as a matter of law" and that "Planet is not a 'consumer' within the meaning of the statute as a matter of law[.]"  *Id*.  Neither challenge is well-taken.

In support of their argument that "a single contract cannot constitute a breach of the FDUPTA as a matter of law," Defendants rely upon a decision by the District Court of Appeals in *Beacon Property Management, Inc. v. PNR, Inc.*, 785 So.2d 564 (Fla. App. 2001).  Motion, p. 15.  However, as Defendants are aware (*see id*.), the Florida Supreme Court quashed that decision.  *See PNR, Inc. v. Beacon Property Management, Inc.*, 842 So.2d 773 (Fla. 2003).  The Florida Supreme Court's decision was based on the precise legal proposition for which Defendants have cited the Court of Appeals' decision, and specifically rejected the Court of Appeals' ruling that a single contract cannot support a

claim under the FDUTPA. *PNR*, 842 So.2d at 775. Thus, according to the Florida Supreme Court: "it is clear that the prohibition [in the FDUTPA] is broad enough to protect against instances of unfair or deceptive conduct as to a single party or under a single transaction or contract." *Id*.; *see also id*. at p. 776 ("The district court's conclusion that the FDUTPA's private right of action is only available to plaintiffs able to demonstrate multiple transactions runs contrary to the interpretation of the Act that has been applied in every appellate district in this state.") Thus, Defendants' argument that an FDUTPA claim cannot be based on a "single contract" simply does not rely on good law -- something that Defendants knew at the time they filed this Motion.

Defendants' argument that only "consumers" can bring claims for monetary relief under the FDUTPA is also without merit. Motion (Doc. 12), p. 16. Again, Defendants' candor with this Court is less than complete. While some cases have so held[4] -- including the 2001 *Burger King* decision relied upon in the Motion -- numerous cases, including at least one in this judicial district, have held that "non-consumers may sue under FDUTPA." *See Kelly v. Palmer, Reifler & Associates, P.A.*, 681 F. Supp. 2d 1356 (S.D. Fla. 2009); *North American Clearing, Inc. v. Brokerage Computer Sys.*, 666 F. Supp. 2d 1299 (M.D. Fla. 2009); *James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecomms', Inc.*, 2008 U.S. Dist. LEXIS 9464 (M.D. Fla. 2008); *True Title, Inc. v. Blanchard,* 2007 U.S. Dist. LEXIS 99070 (M.D. Fla. 2007); *Advanced Protection Technologies, Inc. v. Square D. Co.*, 390 F.Supp.2d 1155, 1164 (M.D. Fla. 2005); *Gritzke v. M.R.A. Holding, LLC*, 2002 U.S. Dist. LEXIS 28085 (N.D. Fla. 2002).

As reflected in these cases, the rationale for declining to limit FDUTPA standing to "consumers" is the 2001 legislative amendments to the FDUTPA, "to allow a damages

---

[4] *See Kelly v. Baum,* 681 F.Supp.2d 1356, 1372 (M.D. Fla. 2009).

action by any 'person,' not just by a consumer." *Gritzke,* 2002 U.S. Dist. LEXIS at *12 (citing § 501.211(2), Fla. Stat. 2001). As the *Gritzke* court explained: "This amendment was a deliberate legislative decision to make damages available not just to consumers but to others injured by violations of DUTPA." *Id.* Accordingly, Planet Bingo need not be a "consumer" to have standing to bring a damages claim under the FDUTPA, and this claim for relief is therefore sufficient.

Defendants' argument that the claim should be dismissed as being pleaded without sufficient particularity is also without basis. The Complaint is highly detailed and specific with respect to Defendants' work history at Planet Bingo, their acquisition of confidential and proprietary information during their tenure at the company (both with respect to the company's technology and its confidential contracts with Wild Bills), and their intentional interference with the Planet Bingo-Wild Bills contracts so that they could install their iBingo unit in place of Planet's. That is more than sufficient to state a claim under the FDUTPA.

Finally, given the deficiencies in Defendants' attack on the FDUTPA claim, there is no basis for Defendants' request for the posting of a bond, based on the assertion that the claim "is frivolous and without any legal or factual merit whatsoever and is brought for the purposes of harassment." The only lack of merit is in Defendants' challenges to this claim, which are without a legal basis and indeed which have not been presented to this Court with the requisite candor. In any event, Defendants' bond request is deficient for the simple reason that they have not requested an evidentiary hearing, which is the only vehicle for ruling on a request for a bond under Section 501.211. *See Sanborn v. Jagen Pty. Ltd.*, 2010 U.S. Dist. LEXIS 50437, **2-4 (M.D. Fla. 2010).

### 4.  Plaintiff has not Impermissibly Pled its Claims Against all Defendants as a Group

In a single paragraph of their Motion, Defendants assert that the Complaint has impermissibly lumped all of the Defendants together as a group.  In this regard, the Motion relies exclusively on Paragraphs 63-72 of the Complaint, where the elements of the two Claims for Relief are set forth.  *See* Motion (Doc. 12), p. 24.  Defendants ignore the fact that both claims for relief incorporate by reference the highly detailed factual allegations of the Complaint, set forth at Paragraphs 10-59 of the Complaint, which are incorporated by reference into the Claims for Relief themselves.  *See* Compl., ¶¶ 60, 69.  The detailed factual allegations -- which the Motion entirely ignores -- do not lump all of the Defendants together, and instead present detailed allegations, individually, against each of the four Defendants.  Thus, there is no basis for this challenge.

### C.  Defendants are Not Entitled to Summary Judgment and their Motion is Premature

#### 1.  Legal Standard

Fundamentally, "summary judgment may only be decided upon an adequate record."  *Snook v. Trust Co. of Georgia Bank, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying the evidence which it believes demonstrates "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Summary judgment is inappropriate where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Under Local Rule, "[a]ny motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 [or Fed. R. Civ. P. 12(b)(6) which requires reference to matters outside the pleading] shall be accompanied by a separate, short and concise

statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion."  L.R. 56.1(A).

Defendants seek summary judgment as part of their initial pleading and there has been no formal discovery in this case to date.  As the Eleventh Circuit has stated, "[t]he law in this circuit is clear:  the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion."  *Jones v. City of Columbus*, 120 F.3d 248, 253 (11th Cir. 1997).  Indeed, defense summary judgment motions are "premature" where a plaintiff has not had a reasonable opportunity to conduct discovery.  *See Istre v. Key Energy Servs.*, 2009 U.S. Dist. LEXIS 23425 (N.D. Fla. Mar. 11, 2009).  "A premature decision on summary judgment impermissibly 'deprives the plaintiffs[] of their right to utilize the discovery process to discover the facts necessary to justify their opposition to the motion.'"  *Vining v. Runyon*, 99 F.3d 1056, 1058 (11th Cir. 1996) (quoting *Snook*, 859 F.2d at 871).  Critically, "[t]he party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits."  *Snook*, 859 F. 2d at 870 (citing *Parrish v. Board of Commissioners of the Alabama State Bar*, 533 F.2d 942, 948 (5th Cir. 1976)).

A non-movant's right to obtain discovery related to the subject matter of a motion for summary judgment is typically asserted through the submission of a declaration pursuant to Rule 56(d) (formerly Rule 56(f)) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 56(d).  "[T]he purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the

opportunity to make full discovery." *Dickens v. Whole Foods Mkt. Group, Inc.,* 2003 WL

21486821, at *2 n. 5 (D.D.C. 2003) (citing *Celotex Corp.,* 477 U.S. at 326).  In the Eleventh

Circuit, "a party opposing a motion for summary judgment need not file an affidavit

pursuant to Rule 56(f) of the Federal Rules of Civil Procedure in order to invoke the

protection of that Rule."  *Snook*, 859 F.2d at 871.

     None of the declarants supporting Defendants' motion -- including Defendants

Kerr, Stevens, and Von Drasek -- have been deposed in this matter, and neither has

Defendant BigTrak.  While Mr. Dalton of Wild Bill's was deposed in the *Wild Bill's II*

case, he was plainly <u>not</u> deposed on Plaintiff's tortious interference with contract or

FDUPTA claims that are asserted here.  Further, as noted, even with respect to Defendants'

factual assertions that can be verified through a review of public records, the declarations

are not accurate.  Thus, Defendants' broad, self-serving claim that "[t]here is no suggestion

that…anything in [Defendants'] declarations is not correct" (Motion, p. 25) is wrong.

Planet should be given an opportunity for full and fair discovery in this case prior to the

Court's consideration of Defendants' motion for summary judgment.

     Defendants essentially urge the Court to enter summary judgment based on the

arguments and materials presented in support of their 12(b) motions.  As noted above,

many of these arguments are simply not credible in light of the known facts or, at a

minimum, are highly disputed, and are based on self-serving declarations of individuals

who have not been deposed in this case.  For all of the reasons discussed above,

Defendants are not entitled to summary judgment on this basis.  Further, Defendants did

not include a separate statement of material facts with their motion, and the motion

therefore is not local rule compliant.  Their summary judgment motion may be denied

based on their failure to submit such a separate statement alone.  L.R. 56.1(A).  However,

if the Court is inclined to convert Defendants' motion into a motion for summary

judgment, Planet respectfully requests that the Court allow time for discovery to be

conducted in this matter prior to further briefing or a ruling on Defendants' motion.  Fed.

R. Civ. P. 12(d) (providing that if a court treats certain Rule 12 motions as one for

summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the

material that is pertinent to the motion.").

**IV.  CONCLUSION**

　　　　Based on the foregoing, Plaintiff requests the denial of Defendants' Motion to

Dismiss, in all respects.


Dated:  February 7, 2011                              Respectfully submitted,

                                                      WEISS & MOY, P.C.


                                                      　s/ Jeffrey Weiss
                                                      Jeffrey Weiss*
                                                      District of Columbia Bar No. 437138
                                                      1101 14th Street NW, Suite 500
                                                      Washington, DC 20005
                                                      (202) 682-1722
                                                      (202) 204-1300 (fax)
                                                      jweiss@weissiplaw.com

                                                      Karen J.S. Fouts*
                                                      Michigan Bar No. P72925
                                                      40 Pearl Street NW, Suite 920
                                                      Grand Rapids, Michigan 49503-3032
                                                      (616) 301-3025
                                                      (616) 301-3024 (fax)
                                                      kfouts@weissiplaw.com

                                                      Attorneys for Plaintiff Planet Bingo, LLC

                                                      *Admitted to practice in Northern District of
                                                      Florida

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  All counsel of record are CM/ECF participants.

<u>  s/ Jeffrey Weiss            </u>